UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>**Plaintiff**,<br><br>vs.<br><br>**D-5 OD WILLIAMS,**<br><br>**Defendant**. | **2:18-CR-20641-TGB**<br><br><br>**ORDER DENYING EMERGENCY MOTION FOR RELEASE** |

Defendant OD Williams moves this Court, in light of the ongoing COVID-19 pandemic, to revisit its 2018 denial of Williams' motion for revocation of detention order. Williams seeks immediate release from custody into home confinement because of the possibility that he will contract COVID-19 at the Federal Detention Center (FDC) in Milan, Michigan, where is currently housed. The Court recognizes the dangers posed by the COVID-19 virus, however, because Williams has not identified any preexisting medical conditions that would make him particularly vulnerable to the virus, has not provided a detailed release plan, and has failed to mitigate the concerns regarding the danger he poses to the public that justified the original order of detention by the

United States Magistrate Judge, and later affirmed by this Court, the motion will be denied.

## BACKGROUND

In October of last year, Williams pled guilty to conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349, conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h), and four counts of aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1). ECF No. 162 (Oct. 10, 2019 Plea Agreement). According to the plea agreement, for nearly three years, Williams and his coconspirators obtained stolen credit and debit account information from real, identifiable victims on the dark web and used the stolen information to purchase more than one million dollars' worth of gift cards and Apple iPhones at Walmarts across the country. *Id*. at PageID.737, 741.

After a detention hearing, Magistrate Judge David R. Grand ordered that Williams remain in custody pending trial. *See* ECF No. 28 (October 2, 2018 Detention Order). The Magistrate Judge based that decision on his assessment that no condition of release could reasonably assure the safety of the community or Williams' appearance in court. ECF No. 28, PageID.103. Specifically, Magistrate Judge Grand observed

2

that the evidence against Williams was "strong," that he would be subject to a lengthy period of incarceration if convicted, that he has previously been convicted of multiple fraud-related felonies, has previously participated in new criminal activity while on supervision, and that he has a history of alcohol or substance abuse.  ECF No. 28, PageID.103. The Magistrate Judge further observed that Williams was also facing multiple theft charges in Illinois and Florida, and that the large-scale and nationwide nature of the fraud, coupled with Williams' criminal history, created a significant risk that Williams would "continu[e] to engage in fraudulent conduct that wreaks havoc on individual victims and is harmful to the community."  *Id.* at PageID.104.  Williams then filed a motion for revocation of detention order (ECF No. 62), which this Court denied after a hearing on December 4, 2018.  Williams is currently being held at the FDC in Milan, Michigan.

Sentencing is currently set for July 16, 2020.  Per Williams' own calculation, his guideline range begins at 121 months for the conspiracy to commit wire fraud and money laundering counts.  ECF No. 162, PageID.739.  Williams also faces an additional 24 month mandatory minimum sentence for the aggravated identity theft counts, which must

run consecutive to any sentence imposed for the wire fraud and money laundering. *Id.* As of the date of this order, no presentencing report is available.

## DISCUSSION

District courts may review detention orders issued by magistrate judges pursuant to 18 U.S.C. § 3145(b). Because Williams has already pled guilty to a federal offense and is awaiting sentencing, his motion is governed by 18 U.S.C. § 3143, a provision of the Bail Reform Act applying to decisions of release or detention of a defendant pending sentencing or appeal. That statute provides that judicial officers should order detention of a defendant who has pled guilty to an offense requiring a term of incarceration "*unless* the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released." 18 U.S.C. § 3143(a). Williams has the burden of convincing the Court that he is not a flight risk or a danger to the community. *United States v. Vance*, 851 F.2d 166, 169 (6th Cir. 1988). Notwithstanding the mandatory detention provisions of § 3143, a district court may release a defendant pending sentencing "under appropriate conditions . . . if it is clearly shown that

4

there are *exceptional reasons* why such person's detention would not be appropriate."  18 U.S.C. § 3145(c) (emphasis added).

Williams cites to 18 U.S.C. § 3142(i), but that provision of the Bail Reform Act covers the situation where an individual is detained while awaiting trial—not where a person has been convicted by guilty plea and is awaiting sentencing.  *Compare* 18 U.S.C. § 3142 (governing persons "charged with an offense") *with* 18 U.S.C. § 3143 (governing persons who have "been found guilty of an offense and who [are] awaiting imposition or execution of sentence").  Although that section permits a judicial officer to temporarily release a defendant from federal custody if he or she "determines such release to be necessary for preparation of the person's defense or for another compelling reason," that provision does not apply to Williams' situation. Here, Williams must establish "exceptional reasons" warranting his release before sentencing; not a "compelling reason." *Compare* 18 U.S.C. § 3145(c) *with* 18 U.S.C. § 3142(i).

Statutory language aside, the Court recognizes the alarming scale and gravity of the COVID-19 pandemic and the serious health risks posed by the SARS-CoV-2 virus, particularly to those who may be especially vulnerable because of preexisting health conditions or age. In some

5

situations, potential exposure to the virus in jails or prisons may provide "exceptional reasons" warranting revocation of an order detaining a defendant pending sentencing. To assess whether concerns about COVID-19 constitute "exceptional reasons" warranting temporary release in this case, the Court will consider a number of factors that are set out in greater detail below.

As a starting point, the Court takes note of a decision by another district court in this circuit, which itself relied on a decision from a district court in Kansas. *United States v. Smoot*, No. 2:19-CR-20 2020 WL 1501810, at *2 (S.D. Ohio Mar. 30, 2020) (citing *United States v. Clark*, No. 19-40068-01, 2020 WL 1446895, at *9 (D. Kan. Mar. 25, 2020)).

Both *Smoot* and *Clark* dealt with pretrial detention, in which courts must consider whether "compelling" reasons support release under § 3142(i), while this case involves a defendant awaiting sentencing, where the standard requires a finding of "exceptional" reasons under § 3143(a). The Court nonetheless finds the factors articulated in those two cases helpful to assessing whether release is warranted in this case, where the Defendant has already pled guilty and is awaiting sentencing.

The factors set out in *Smoot* and *Clark* are: (1) the original grounds for the defendant's detention; (2) the specificity of the defendant's stated COVID-19 concerns; (3) the extent to which the proposed release plan is tailored to mitigate or exacerbate other COVID-19 risks to the defendant; and (4) the likelihood that the defendant's proposed release would increase COVID-19 risks to others. *See Smoot*, 2020 WL 1501810 at *2; *Clark*, 2020 WL 1446895 at *9. While helpful, these factors do not explicitly require the Court to consider the actual conditions in the facility where the defendant is being held, and in particular the measures being taken there to address the potential outbreak of COVID-19. Consequently, the Court will apply a modified set of factors based on those in *Smoot/Clark* in considering whether the defendant has set out exceptional reasons in favor of release:

(1) the original grounds for the defendant's pretrial detention;

(2) the nature, seriousness, and specificity of the defendant's stated COVID-19 concerns (e.g., underlying medical conditions, age, etc.);

(3) the conditions in the facility where the defendant is being held (e.g., social distancing measures, screening protocols for new

> prisoners, the number of prisoners diagnosed with COVID-19, and availability of appropriate medical treatment);
>
> (4)  whether conditions of release can be imposed to mitigate COVID-19 risks to the defendant and to the community.

Here, Williams pled guilty to six felony counts for his role in a nationwide, multi-year, multimillion-dollar credit and debit card fraud scheme.  ECF No. 162.  Williams' criminal activity left innumerable victims to deal with the personal havoc wrought by identity theft.  He faces a serious sentence: He does not dispute that because of his criminal history he faces a guidelines range beginning at 121 months for the wire fraud and money laundering counts, and a mandatory 24-month sentence for aggravated identity theft, which must be served consecutive to the sentence imposed for his other crimes.  ECF No. 162, PageID.739. Because of Williams' prior convictions and prior history of committing new crimes while on probation, the Magistrate Judge found that no condition of release could reasonably assure the safety of the community or Williams' appearance in court.  ECF No. 28, PageID.103.  This Court later affirmed that decision, and nothing in Williams' Motion mitigates

the danger this Court has already found that Williams poses to the community.

The second factor also does not weigh in favor of Williams' release. Although data suggests that no category of persons is immune from contracting the COVID-19 virus, Williams submits a general affidavit from a doctor in California describing the dangers that COVID-19 poses to the incarcerated population.   Brie Williams Aff., ECF No. 179-2. Williams does not state that he is suffering from any underlying health conditions or other factors that would place him in a higher risk category if he contracted COVID-19.

As for the third factor, Williams is currently housed at FDC Milan. Available information from the Bureau of Prisons reveals that, as to the Federal Correctional Institution at Milan, there are currently 23 inmates and 34 staff who have been infected with the COVID-19 virus.  *See* https://www.bop.gov/coronavirus (last viewed April 20, 2020).  As to the Federal Detention Center, the Court has received information from the Bureau of Prisons that there are currently two detainees at the FDC who have tested positive.  Clearly, the current infection numbers at prisons around the country, as well as those at the larger FCI Milan, are

concerning.  Comparatively, the FDC—where Williams is being held—does not have a significant number of cases of the virus.  And at the same time, the Bureau of Prisons has outlined the extraordinary steps it is now taking to reduce the risk of infection for prisoners at all facilities, including FDC Milan.  The new measures include: (i) a 14-day lockdown of all prisoners to decrease opportunities for community spread; (ii) a requirement that all newly-arriving detainees and BOP inmates are screened for COVID-19 exposure risk factors and symptoms; (iii) all newly-arriving detainees/inmates are isolated in quarantine for 14 days as a matter of course, regardless of whether they display any symptoms or exposure risk factors; (iv) asymptomatic detainees/inmates with exposure risk factors are quarantined; (v) symptomatic detainees/inmates with exposure risk factors are isolated until medically cleared; (vi) in-person social and attorney visits have been suspended; (vii) staff have increased sanitation of common areas and ensured that there is an adequate supply of disinfectant for individual prisoners to use in their cells; and (viii) implemented daily screening of all staff for fever with required self-reporting of any symptoms.

https://www.bop.gov/resources/news/20200331_covid19_action_plan_5.js
p (last accessed Apr. 13, 2020).

Finally, Williams has not provided the Court with a satisfactory
release plan.  In his reply, he asks the Court to release him to home
confinement with his mother.  ECF No. 182, PageID.906.  Williams does
not provide any further detail, for example, concerning where his mother
resides and how he would travel there.  Moreover, Williams has failed to
explain the nature of the conditions where his mother is, whether anyone
there may have possibly already contracted COVID-19, whether his
mother would  permit him to practice social distancing and to take other
measures necessary to alleviate the risk of him contracting and spreading
COVID-19—to his family or the broader public.

## CONCLUSION

At bottom, this Court has repeatedly held that Williams presents a
serious risk to the community.  For the innumerable victims who have
had their identities stolen, however, the havoc he has wreaked on their
lives has no doubt caused considerable suffering.  Moreover, Williams has
demonstrated in the past that he is willing to commit new crimes while
out on supervision, and he has provided no reason to believe that such a

11

risk would not exist here were he to be released to home confinement. The Court recognizes both the general dangers posed by the COVID-19 virus, and potential for increased risk for prisoners such as Williams, who live in confined spaces with other prisoners and share common spaces. At the same time, Williams has not identified any underlying health concern that would make him particularly vulnerable to COVID-19, nor has he provided the Court with a detailed release plan that would assure the Court that he does not pose a greater risk of infection to himself or others outside of prison.

Taken together, the four factors do not counsel in favor of a finding of "exceptional" circumstances in this case. Should circumstances materially change, the Court would of course be open to reconsidering this issue, but on the record before the Court, Williams' Emergency Motion for Release (ECF No. 179) is **DENIED**.

**SO ORDERED**

DATED: April 21, 2020.

BY THE COURT:

/s/Terrence G. Berg
TERRENCE G. BERG
United States District Judge

12